Please call the next case. Will the attorneys who are going to argue the case please approach the podium please. Identify yourselves and the party you represent and indicate to the court how much time you'd like to argue. Good morning your honor. I'll preface on behalf of the plaintiff and the appellant T.O. Hardiman. And I think I will probably need about 30 minutes. Cut it short. You get 20 minutes. Including in the 20 minutes is 5 minutes for the rebuttal. Then I'll take 15 and 5. Okay. Good morning your honors. Steve Mandel on behalf of the defendant's appellees. And I will take my 20 minutes. Very well. Thank you. Okay. You may proceed. Mr. Phelps. I'm going to please the court that this is based on a defamation. January 16th of 2014 T.O. Hardiman was running for governor of the state of Illinois. He had just made the ballot, the number one slot on the ballot for the democratic candidate. On that day also, January 16th, 2014, the defendant's Fox Television, WFLD News, Mike Flannery, Rehan Aslan, Katie Frazier, Elizabeth Kane decided to do a news story on Mr. Hardiman. They had done a previous news story and they wanted to do another one on him. Kane, Elizabeth Kane, an employee who was a producer without any dreams, had to research and investigation, just came out of her mind that Mr. Hardiman was a former gang member. And she decided to do a teaser to get the general audience to view Mr. Mike Flannery's broadcast. And in that teaser she said, while former gang member who was once accused of beating his wife wants to be your governor, while he says voters should not be concerned with this domestic violence conviction. Can I just, but it doesn't mention Mr. Hardiman there. Is that a problem? No, I don't think it's a problem because the broadcast was about Mr. Hardiman and the teaser definitely refers to Mr. Hardiman in terms of, it refers to the fact that right after the teaser comes the broadcast with Mike Flannery. Thanks. But Kane has indicated that she did not verify any of the information, that she just came out with the former gang member herself. She's given various different reasons how she came out. First she said she confronted him with another gang person. And then she said that she thought he was a former gang member because he knew so much about gangs. Well, that's because he was the president, he's the former president of Ceasefire, which is what they would do is go into the neighborhood and stop violence between gang members. So it makes sense that she would think he was a former gang member because of her knowledge that he was in Ceasefire? No, because based on that rationale, every police officer who's a gang member in the gang unit would be classified as a former gang member. The way you just argued that, it sounded like that made sense, but it doesn't make sense to you. Okay. Okay. The trial judge accepted Kane's mere belief that Mr. Hardiman was a former gang member. She drew the conclusion that on the credibility and veracity that Mr. Kane was telling the truth. And most of the summary judgment, that's not the trial judge's duty. It's my understanding the trial judge has to decide the credibility and veracity of the witness. Was there any contrary evidence submitted at summary judgment to refute that position of that individual? Well, yes. We talked about the fact that she just made the statement without any rebuttal or belief. And the fact that she did not do any research, she did not follow any journalistic practices or principles. She just came into the time of her head. She just wrote this teaser. She said she reviewed a Tribune article in a, I forget the other one. iNews. iNews. No, that was internal. It was another blog type thing that she reviewed. Correct. The problem with that is. It said his background in dealing with gangs. Well, no. Two other employees of the defendants went out on the Internet, searched the Internet, and ran into an article that said Mr. Hardeman had been convicted of domestic violence. They cut and pasted it into their iNews. And these two individuals, this is Sean Hatton, I can't think of everyone's name right offhand. They didn't do any research. They just went on the Internet, saw this article, and put it in their iNews. So everyone in the defendant's employee would go to the iNews and take that out. No one's verifying it. No one's checking. And they would present that as though they did the research. They didn't say, we went on the Internet, we got this information, and it said that Mr. Hardeman was convicted of domestic violence. But had that happened, then they would report what they actually read, and the general public would make a decision as to whether they would believe that or not. But they stated as though they did the investigation. They also stated that they indicated that they talked to Mr. Hardeman, which they never did talk to Mr. Hardeman. They indicated that Mr. Hardeman made statements that Mr. Hardeman did not make. If we could just go back to the former gang member. Is that the type of thing, you know, In other words, if somebody's a former alcoholic, a former drug user, a former anything, a lot of times, to me, that's a real positive thing that they have changed their life. I know it wasn't true, but is it negative? Absolutely, if it's not true. If someone's went through that and changed their life, then I would give them credit because they've changed their life. But to say something negative about someone who has not been there, I think that is negative. Yes, sir. Thanks. So also, after that broadcast, they read a rare article. And this was done by Katie Frey, who's a Pergamon employee. And once again, she said she made it herself. She didn't, she didn't, no one, no one, no one talked to Mike Flannery. Everything was supposed to be there, but now it's that the teaser and the rare article was supposed to be, the teaser was to get people to watch the broadcast. The rare article was supposed to summarize the broadcast. No one talked to Mike Flannery. No one did any investigation. They just went, they would go to his iNews, take information out, and then they would make these articles up. And so what she says is, candidate, controversial candidate wants to be your next governor. And then she went on to say that Tito Hollywood told Fox 32 News that he had a 1999 conviction exposed. He never said that. And if you watch the broadcast, he makes it clear. I've never been convicted. I have no convictions on my record. Did he plead guilty? Well, he never answered whether he pleaded guilty or not. No, no. Did he plead guilty? He did. He pleaded guilty. So he did plead guilty to a simple battery. Yes, he did. Right. But he did not have a conviction. The battery was against his wife. The battery was against his wife. That's correct. That's correct. But if they had said that, that would be an accurate reporting. We're not talking about a news outlet. They have the protection of New York Times v. Sullivan. They should not be allowed to just go blogging exposés out there without doing any type of investigation or verification or checking out their sources, especially given the fact that during the broadcast, Mr. Hardiman made it clear several times that he did not have a conviction. And they still are not. Somewhere in the record, it states that Mike Flannery told the producer that that was not true. That's correct. But to me, after the teaser ran, Mike Flannery went to Denise McCann and said, well, why don't you run away, because that's not true. And Denise McCann said, well, I think I got confused with someone else. And then later on, she said, well, I thought he was. It still makes me worry. Take your time. Thank you. When she said, I thought he was a former gang member because he knew so much about gangs. And that's when I was saying that he was the president of Ceasefire. Now, Ceasefire was a private organization with Illinois State, University of Chicago, University of Illinois serving. Did the teaser, how many times did it run? The teaser only ran once. So it ran about 10, 15 minutes before the newscast, right? Something like that. That's correct. And it never ran again? The teaser did not run again. That's correct. However, unless you put a statement out there, it's out there. As far as we know, millions of people saw that. And is that defamatory per se or per quid? Well, the former gang member would be per quid. The conviction would be defamation per se. The same thing as per quid would be defamation per se. All right. The Illinois State Police conducted a test of a public address system. Is this all in your test? If it was clear from the evidence that the former gang member's statement. Try it again. Okay. It's clear from all the evidence that both the former gang member's statement and the conviction statement were false. The defense had never. Why do you say the conviction statement was false? Because he wasn't convicted. Did he plead guilty? He pleaded guilty. Right. Does that result in a conviction? No, it did not. It did not result in a conviction. Why not? Well, the way they worked it out, he pleaded guilty, supervision. Nothing else happened. It wouldn't be on his record. And then he'd get expunged. Now, this is important because if you get convicted for a domestic battery, you cannot get it expunged. It would still be on your record. If you don't have a conviction, it can be expunged. And so it's just like when the court said in Myers v. Telegraph, there's a big difference between a misdemeanor and a felony. And I think you take the proposition from there that there's a big difference between being convicted of a crime and not convicted of a crime. Tell me why it's not substantially true that someone who pleads guilty to battering his wife, it's not substantially similar or true that that's a domestic battery. Why is that different? The reason it's different is because a conviction has so many negative terms and so many consequences as a result. There's certain jobs you can get if you have a conviction that you can't get if you don't have a conviction. So that's why it's not substantially true. It has a big significance in terms of how you move forward with your life. And you're saying that it had already been expunged prior to the teaser? I'm saying that his criminal record had been expunged. Had been expunged prior to the teaser. That's correct. Prior to the teaser. And so again, the teaser implies that there was a conviction. And I kind of have the same question. The conviction was for a simple battery, but it sounds as though the victim may have been an ex-wife. But it wasn't a conviction. He pled guilty to a simple battery, but he was an ex-wife. To his wife at the time. His wife at the time. So it was his wife. Charged him with battery. He pled guilty. Got whatever supervision or probation, whatever he got. And then subsequently, years later, that conviction from the plea of guilty was expunged. A conviction was never entered. A conviction was never entered. So what happens is, if you plead guilty, you get supervision, you won't get a conviction if everything goes okay. You never have a conviction. So in that situation where he was convicted, he wouldn't get the conviction eventually, there never was a conviction. There never was a conviction. That's why we sued, because he made it clear to them during the broadcast, I've never been convicted of anything. And for the fact that they ran that, nobody really knew about the mansion I ran, because it wasn't on his record. It had already been expunged. Now let's just say they had said, they had told him the facts were. Okay, then we wouldn't be here today. If they had said that he pled guilty to a domestic battery, or to a simple battery, then we wouldn't be here today. And, in fact, during the broadcast, Mike Flannery said, well, you did plead guilty to a battery. He was very meticulous about his words. So the fact that the teaser and the red light bulbs could be based on the broadcast, it's clear to me that, and I think a reasonable jury could agree, that when they said, when they met up with a former gang member, and when they met up with the conviction, that they were reckless, at the very least they were reckless. They didn't care whether it was true or not, especially after he's told them several times. And the fact that they didn't do any investigation, they didn't talk to anybody, they didn't even talk to the person who was doing the broadcast. They did it on their own, without any type of research, without any type of follow-up or looking into that. Also, I just want to quickly talk about, they dismissed, the court, the 2619 dismissed Elizabeth Cain, Mike Flannery, not Mike Flannery, Elizabeth Cain, Rehan Aslam, and Katie Frazier. It's our position that pursuant to 735 RCS 5-216, which talks about amendments, which is similar to Rule 15C of the federal court, that our second amendment complaint related back to the original complaint. They all had the same lawyers who have been here since the inception of the case, were fully aware of it. Cain and Aslam helped work on discovery, but for their discretion in terms of who wrote the articles, because remember, in the red article, they said Mike Flannery wrote the article. They committed fraud on the part of Mike Flannery in the article that he did not write. They didn't say that. Oh yes, the article says, by Mike Flannery. Well, it had his name, it was under his byline, right? Well yes, it says, controversial candidate, wants to be a vice president by Mike Flannery, political editor. But Mike Flannery has testified that he didn't even know about it until after it was posted. So why is he a defendant? Well, because at the time, we were led to believe because it said by Mike Flannery. If you put something out there in your news source, we should have been able to rely on the truth and veracity of that statement. So that's why he was sued. But only after discovery did we find out who actually were involved in doing the broadcast, the teaser rather, and who was doing the red article. He had nothing to do with it. Well, that's a question for Drew, because there's now saying that he had nothing to do with it. He just said he didn't have anything to do with it. Well, I'm saying that there are defenses that he had nothing to do with it. Well, do you have any evidence that he did have anything to do with it? At this point, no, we do not. Then why is he still a defendant? Well, he hasn't filed a motion to get out after the discovery. Fair enough. And I'd like to also say this, though. A jury could decide that given all the misstatements by Cain and Ferguson, they're going to find that they don't believe that and maybe that Fannie was involved. It's a possibility. That's all I'm saying. It's a possibility. Anything further? And I'll say it the rest of my time. Very well. Thank you. Good morning, Your Honors. Thank you, Counsel. Good morning. I just want to make a couple of threshold observations here. The only thing that we're dealing with is the teaser. There's no alleged inaccuracy in the actual report. And there's also no dispute that the station issued a clarification at the end of the tease regarding the former gang member statement because Mr. Hardiman called in and said I wasn't a former gang member and they made that clarification. That was during the report, not at the end of the tease, though. Correct. Correct. Another interesting fact is that the station did not issue a clarification on the conviction statement because when Mr. Hardiman called in, he didn't even complain about the conviction statement. That's in the record through Mr. Assam's testimony, Mr. Flannery's testimony. And this is all important because the case laws, and we cited the Washington National case, that when a defendant makes a clarification, that's actually evidence counter to actual malice. But getting to the nub of this, there are some important legal and factual issues that I think render the plaintiff's arguments here inapplicable to this case. Let's start with the legal, and perhaps the court already knows this, but because this is a news story about a public official, someone running for office, there are special rules that apply. First of all, that's core political speech that deserves the highest protection of the First Amendment. And the plaintiff must meet a much higher fault standard, right? And that's known as the actual malice standard. But actual malice is sort of a misnomer because it really doesn't involve malice like we know it from a common law standpoint. The plaintiff has to show that the defendant's published something knowing it was false or with reckless disregard of its truth. And reckless disregard is kind of a misnomer, too, because it really doesn't deal with the reasonably prudent standard. Rather, the plaintiff has to show that the defendant's harbored serious doubts as to the truth or had a high degree of awareness of probable falsity. And that not only comes down from New York Times v. Sullivan, but also the Illinois Supreme Court. So on that issue, at what point did Mike Flannery advise the producer that the statements were not true? Okay, let me respond to that, Your Honor, because what happened was the producer writes the tease independently before the broadcast. The tease is read. Mike Flannery is sitting in the news bay and goes on and does his report. After his report, he talks to the producer and says, I didn't know that T.O. Hardiman was a former gang member. I know that Wallace Gator Bradley boasts of being that. And so he never says that's not true. He just raises the possibility. And the testimony of the producer is unshaken throughout. She believed that he was a former gang member because he works with former gang members, supervises them. He's been on numerous television stations boasting about his expertise. And, in fact, I think it was to Justice Griffin's question, these people who work in Cease Fire, they call themselves interrupters. Actually, being a former gang member is a positive. It gives them street credibility. People who are on the street don't want to deal with gang members. I don't believe that's what was being referred to at that time, that it gives credibility on the street. I think this was simply saying that it's not a bad thing you got your way together. It's not saying the same thing. Well, I think the testimony and the deposition by Mr. Hardiman was that being a former gang member does give street credibility. But I'll move on. The point is that it's a subjective standard. You have to show the state of mind of the defendants saying something that was false, knowingly false, or seriously harboring serious doubts about its truth. And the plaintiff has to show that by clear and convincing evidence. So we've talked about the legal issue. What about the factual issue? One thing that's in the record, but maybe doesn't jump out from the briefs, is that this was a hot news story. Everything from the event that precipitated the story, when Governor Quinn announced that he was dropping his challenge to Mr. Hardiman becoming on the ballot, to Mr. Flannery having to secure an interview with Mr. Hardiman, go out in the field, get a camera crew, conduct the interview, come back, write the story, all on the same day in time for the 9 o'clock news. Independently, other people at the station had to do other tasks. The producer had to write the intro, the tease that preceded the story. You had the web producer having to write a companion article. And then the assignment editors having to compile the research to put this all together. So the bottom line here is the story had to be put together quickly. The law does not require perfection from newsrooms, even if they have a longer time frame. So certainly not in this case. And the law says that the media is entitled to breathing space. In other words, room for error, especially in a case like this involving a public official. So the trial judge was correct in determining that the plaintiff offered no evidence of actual malice. There were over 15, I think 15 depositions taken in this case, an exhaustive record. The plaintiff offered no affidavits, no testimony that disputed either the testimony of Beth Kane as to why she believed that he was a former gang member, or Katie Frazier as to why she wrote that he was convicted on his guilty plea. The key issue here is whether there was any evidence that either Kane, in writing the tease, or Frazier, in writing the web article, doubted the truth of the conviction statement or the former gang member statement. And respectfully, plaintiff does not address that issue. He talks about the fact that that information was in the tease, but it wasn't in the report. That is irrelevant to the state of mind. The fact that Frazier used Mike Flannery's byline, that says nothing as to whether or not Frazier believed the conviction statement. By contrast, the factual basis, why did Kane and Frazier believe those things, is relevant. Now, do you really believe that the only issue is the subjective belief of the defendant? Yes, Your Honor. That's the whole issue from an actual malice standpoint. Is there actual malice? The key question is, did the speaker or the defendant harbor serious doubts about the truth of what they were saying? The only way to determine that is to ask the person, did you believe it? And then the case is over. Definition of cases would never go anywhere if the person just simply said, oh, I believed it. There is that axiom, right, Your Honor? But if you look at the Kessler v. Zeckman case, it says that axiom doesn't apply when the plaintiff fails to come forward with any contrary evidence. And let me tell you why their statements are based in fact. Okay, first of all, let's look at the conviction statement. Number one, plaintiff's girlfriend obtained an order of protection against Mr. Hardiman in 1993. Number two, in 1999, plaintiff attacked his wife, a different woman, and pled guilty to misdemeanor domestic violence. Okay? To be fair, Mr. Hardiman says it was simple battery, right? But if you read the statements on the record by the prosecutor, he called it domestic battery. That's at C, record C, 1851. So then in 2013, plaintiff was again arrested for attacking his wife, a different wife, who obtained an order of protection against him. So that was on the record, okay? And then what did the authors of the teaser and the web article have in front of them? Two separate tribune articles, one dated May 13, 2013, one June 2, 2013, both which reported that that 1999 incident resulted in a conviction and attributed that statement to prosecutors. A similar article by CBS Chicago, a similar article by WGN, and the Sun-Times. So there's factual basis for that belief. She just didn't make it up, right? In fact, you can go into our news, the database, which shows the research and how that was copied into the tribune articles and all of a sudden the Sun-Times article were copied into the database, showing that that was the basis for why they reached that conclusion. And here's a really significant fact, okay? In that 2013 arrest, reporter Lisa Chavarria, another reporter at WFLD, covered the bond hearing. Mr. Hardiman held a press conference in which he admitted that the 1999 matter resulted in a conviction, okay? There's been some suggestion that these false statements were created to destroy his gubernatorial campaign. But this happened back in 2013 before he ever decided to run for governor. So there's ample evidence in the record that he was convicted. And to your point, Justice Pierce, when you plead guilty to something, you plead that you did the act. The gist is the same, whether or not there's a conviction that was eroded by supervision or not. In terms of the effect on a person's reputation, there is no difference. But let me come back to the former gang statement, okay, because there's ample evidence for that that justified or informed or made her belief that he was a gang member understandable. As I said, it's uncontradicted that he supervises former gang members, that he's boasted about running with gangs and committing street crimes as a youth, and that he's a former drug addict. He's publicly touted his expertise in this area, not to mention that numerous other published articles refer to him as a former gang member. The BBC, the Daily Northwestern, a site called examiner.com, the American Psychological Association put out something saying the same thing. All before this tease was drafted, okay, and broadcast. Not to mention that at the end, showing, you know, no sense of actual malice, they gave Mr. Hardiman's version or his position that he wasn't a former gang member. Let me just add, if you watched the report in the interview by Mr. Flannery of Mr. Hardiman, he said, well, why don't you tell us what happened in 1999? And Mr. Hardiman said, I refuse to go back there. So even though under the case law, a denial by a target or an accused person does not result in serious doubt, does not satisfy the serious doubt burden here, Mr. Flannery gave him ample opportunity to respond, and he didn't. He refused to go back there. Summary judgment in these types of cases is routinely granted, because let's face it, the law is built to protect the media, okay? Especially when someone throws their hat into the ring, into the political arena, the law protects robust debate and criticism of that. I understand that Mr. Hardiman may not have liked that criticism, but that doesn't mean that he has a defamation claim. I'd like to close, if I can, with something, a quote from Martin v. State Journal-Register. If, as plaintiffs suggest, courts require reporters to thoroughly check their facts so as to eliminate all doubt about their truth before going to print, such developing news stories would end up swallowed by the delay of this exhaustive investigation. We are confident that this reason is one which underlies the Supreme Court's holding that a reporter libels a public figure only when that reporter prints a story knowing, with emphasis on knowing it, knowing it to be false, or with reckless disregard for its truth. These exacting terms are meant to guarantee that a reporter will not bear liability merely because the reporter's story turns out to be inaccurate. We can debate about whether or not the story was inaccurate, but clearly there was nothing said with actual malice. We've offered, obviously the court can affirm on any basis here, we made the substantial truth argument that Your Honor alluded to, we also point out that since the former gang member statement is per quad, the plaintiff failed to introduce any evidence of special damages resulting from that. So with that, I'll take any questions. No, thank you. Thank you, Your Honor. Mr. Phelps. Thank you. Okay. First of all, there was no clarification. They merely stated that Mr. Hardeman said that he wasn't a former gang member. A clarification would be they said they misstated or they misquoted the record. Just to say that Mr. Hardeman says that he wasn't a former gang member gave the impression that they still stood by their attitude. The reason that they have New York Times as a set of protections is because it's going to be a news organization. There's certain journalistic practices that are to be followed to make sure the stories are true, that you have sources, that you're not just bribing. Today everybody bribes. Based on what the defense is saying now is anybody can just bribe, cut and paste, say anything about anyone, and then say, well, I thought it was true, and say I'm covered by New York Times versus Seller. It's my understanding that everyone that bribes is not a news media. Fox, the 32nd Daily Film, is a news media. Now, Mr. Costa says that because they were in a rush, they just had to put it together. That doesn't excuse you from trying to get it right. You must get it right, or at least try to get it right. They don't even try to get it right. Think about what he's just said. The main part of the article was to say that a person running for governor is a former gang member and has been convicted of domestic violence. That's the main part of the article in the Broadcasting Aware article. Shouldn't you verify that before you say that? It wasn't like they did a whole lot of things about Mr. Hardiman and just happened to throw that in. That was the full basis of their article. They had a duty to make sure it was true and correct. Now, modest is determined as all of the circumstances. The fact that they say they talked to Hardiman and Hardiman said something that he did not say, the fact that they say that Mike Fannie wrote the article, this goes credibility and veracity. If you don't believe one thing, the jury doesn't have to believe anything that a person says. Cash said there was reason. First she said that she thought he looked like someone else, he thought he was someone else. Then she says, well, I just thought that because of his background in terms of he knows about gang activity. We can say that about, like I indicated earlier, about any undercover tactical officer who's in the gang unit. Otherwise we can say, oh, I think that means, based on what they're saying, I can just go on the Internet, find out something about a tactical officer, put it on the Internet, and destroy his reputation and say, hey, Josh, I thought it was true. What about the issue of special damages? He has indicated damages. He lost campaign contributions. Now, the campaign contributions, where would they go, to him personally or to his campaign? It would go out to his campaign. And he would not be entitled to any of that money, correct? Not personally, that's correct. But it would have to have happened on his campaign. That's not special damages, pecuniary damages to himself. It may have been to his campaign, but not him. Okay. So what's your other special damages? He also lost speaking engagements as a result of that. He lost a number of speaking engagements. Well, I thought that you, in your complaint, you said that he lost the speaking engagement because of the domestic bandit, not because of the gang state. I believe it was a combination of the two, if I recall correctly. I believe you didn't plead with him. Okay. Well, I'm just saying that I'm trying to clarify. I understand. So any other special damages? Just job opportunities. He lost job opportunities. Well, would you recognize that per quad, the gang member statement I would consider, personally, I would consider a per quad defamation. Absolutely. Not per se. I agree. So if you have per quad, you have to plead special damages, right? Yes. And I don't believe you pled any job opportunity loss as a special damage. So just on the face, I mean, how do you get around the requirement, pleading requirement under 615 that you plead and ultimately prove special damages? Well, when he gave his deposition, if I recall correctly, he talked about lost job opportunities in his deposition. And that's part of the record, the common law record. Then that would be your only element of special damages? Loss of job opportunities and speaking engagements, that's correct. Now, also, they talk about, first I want to indicate that all the places, all the sources that they say talk about Mr. Hartman being convicted of domestic battery, they are retracted. Fox News and WFLD is the only one that has not retracted. Chicago Tribune retracted. That's part of the record. Also, when they wrote the tease in the article, they specifically talked about a 1999 conviction. And when we took the deposition of Cain and Frazier, they talked about all these things now that they're going to try to find to substantiate why they said the things they said. The only thing Cain said was she made up the former gang member statement and that she went to iNews to get the conviction statement. Frazier said the exact same thing. She went straight to the iNews to get the conviction statement. So they didn't talk about any other sources for how they got the red article and the teaser. The plea deals are done all the time in criminal courts. And not necessarily because a person committed the crime. Many times they can't afford representation. They're trying to get out of the county jail. And so it's easier to plead than to sit in county jail and go to trial. So many people have pleaded guilty to some of the things that I do just to avoid a conviction and avoid the hassle of the criminal justice system. And also, there are plenty of genuine issues of fact that are in the dispute that are genuine because it determines that. Well, let's stick to rebutting what this person said. Okay. Well, he indicated that there were no facts. And I believe there are plenty of facts. And we said there are genuine issues of material fact that jurors can differ as to whether or not that is true. You have to present evidence of summary judgment. In other words, he's saying that they presented affidavits and evidence and depositions saying that this is the fact as they know it. You presented no counter affidavits, depositions, or evidence to rebut what they said. The only thing we can do because we're talking about malice. We're talking about subjective belief. We're talking about intent. All we're going to do is provide evidence, circumstantial evidence in most cases, some cases direct, circumstantial evidence, that jurors can determine that they did not believe and they don't have a good faith belief that what they said was true. So Amanti v. Popkin, your Supreme Court says that a major lie that you believe is not sufficient enough to just say that you presented the article in good faith. The problem here, Your Honor, is that as the judge asks the counselor, if you just say it's going to be strictly a person's intent, and they say, I didn't do it, or I believe that, I believe that it was true, defamation would be illusory for public officials. You can just say anything you want. Just say, I don't believe it. And as we all know, there are many people going to jail or going to prison for circumstantial evidence. And the burden is even higher. And the other group is going to have evidence, direct evidence, but definitely enough circumstantial evidence that we, the jurors, will decide that Kane and Frazier were not being honest when they said that they truly believed that the plaintiff was a former gang member and that the plaintiff had been convicted of domestic violence. And, in fact, they could have determined that they're just talking to a microphone. Okay. Any further questions? All right. Thank you. Thank you. All right. Thank you all for your efforts in this regard. We'll take the matter under advisement before it's in recess.